# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03530-RBJ

ACA INTERNATIONAL and FRESNO CREDIT BUREAU d/b/a CREDITORS BUREAU USA,

    Plaintiffs,

v.

ADMINISTRATOR OF THE UNIFORM CONSUMER CREDIT CODE, MARTHA FULFORD, in her official capacity,

    Defendant.

## DEFENDANT'S MOTION TO DISMISS IN PART THE AMENDED COMPLAINT

Colorado Uniform Consumer Credit Code Administrator Martha Fulford ("the Administrator"), by and through undersigned counsel, moves to dismiss in part the Amended Complaint, Doc. 15, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### Certificate of Conferral under Civ. Practice Standard 7.1B

Undersigned counsel certifies that counsel conferred in good faith with counsel for Plaintiffs via videoconference and email. Plaintiffs oppose dismissal. The parties further set out their respective positions in pre-motion letters to the Court, and Defendant was granted permission to file this motion to dismiss. Docs. 16, 19, 20.

### INTRODUCTION

Plaintiffs challenge legislation concerning consumer reporting of medical debt information. In 2023, the Colorado General Assembly amended two statutes to add new provisions relating to medical debt. First, the Consumer Credit Reporting Act ("CCRA") was amended to

1

prohibit consumer reporting agencies from making consumer reports that contain adverse medical debt information, with certain exceptions. C.R.S. § 5-18-109(1)(f)(I). Second, two new provisions were added to the Colorado Fair Debt Collection Practices Act ("CFDCPA"). One of those provisions enlarged the existing list of deceptive conduct that is prohibited in connection with debt collection, so as to include misrepresenting that medical debt will be included in a consumer report or credit score. *Id.* § 5-16-107(1)(r)(I) (the "CFDCPA Misrepresentation law"). The other provision requires debt collectors to disclose in writing that Colorado law prohibits credit bureaus from reporting medical debt or including such debt in credit scores, absent an exception. *Id.* § 5-16-105(3)(e)(I) (the "CFDCPA Disclosure law"). Plaintiffs assert that these amendments to the CCRA and CFDCPA are preempted by the federal Fair Credit Reporting Act and violate the First Amendment's Free Speech Clause.

Plaintiffs' claims should be dismissed in part. All claims concerning the CCRA should be dismissed under Rule 12(b)(1), because they are barred by sovereign immunity. The Administrator does not enforce the CCRA, which instead is enforced through a private right of action. Nor have Plaintiffs alleged any facts to plausibly show that the Administrator has a demonstrated willingness to enforce the CCRA. As such, the *Ex parte Young* exception to sovereign immunity does not apply to Plaintiffs' CCRA claims.

For similar reasons, Plaintiffs lack standing to assert their CCRA claims. Any injury Plaintiffs suffer due to the CCRA is not traceable to the Administrator, because she does not enforce it. Nor would enjoining the Administrator from enforcing the CCRA redress Plaintiffs' claimed injury.

Finally, Plaintiffs' First Amendment challenges to the CFDCPA provisions should be dismissed under Rule 12(b)(6), because Plaintiffs do not state a plausible claim for relief. The CFDCPA Disclosure law requires only the disclosure of accurate, objective information about existing Colorado law. Such compelled commercial speech is reviewed under the deferential standard set forth in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985), which the CFDCPA Disclosure law easily satisfies. And the CFDCPA Misrepresentation law prohibits only false or misleading commercial speech, which states are free to regulate consistent with the First Amendment. As a result, these claims should be dismissed.

## ARGUMENT

### I.   Legal Standards

**Fed. R. Civ. P. 12(b)(1).** Plaintiffs bear the burden of establishing subject matter jurisdiction, because they are "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). To do so, Plaintiffs must sufficiently allege both that an exception to Eleventh Amendment immunity applies and Article III standing. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (Eleventh Amendment); *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012) (standing).

A Rule 12(b)(1) motion may present either a facial or factual attack on subject matter jurisdiction. *See Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). Because the Administrator raises a facial challenge here, the Court should accept the Amended Complaint's well-pleaded factual allegations as true. *Id.* at 1206. However, the Court need not accept legal conclusions cast as factual allegations. *Id.*

3

**Fed. R. Civ. P. 12(b)(6).** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is not required to accept conclusory or unsupported allegations. *See Twombly*, 550 U.S. at 555. A claim may be dismissed "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

### I.     Plaintiffs' challenge to the CCRA is barred by the Eleventh Amendment.

Eleventh Amendment sovereign immunity "precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). State officials sued in their official capacities are immune because they are "an arm of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), and "such suits are no different from a suit against the State itself," *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quotations omitted). The only potentially applicable exception to this immunity—*Ex parte Young*, 209 U.S. 123 (1908)—does not apply here.

For *Young*'s "narrow" exception to apply, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021), the state official sued must have "some connection with the enforcement of the challenged action," *Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) (quotations omitted). Specifically, they must have (1) "a particular duty to enforce the statute" and (2) "a demonstrated willingness to exercise that duty." *Hendrickson*, 992 F.3d at 965 (quotations omitted).

Plaintiffs cannot rely on the *Ex parte Young* exception here because the Administrator has neither a particular duty nor demonstrated willingness to enforce the challenged CCRA provision. The CCRA does not authorize the Administrator to enforce its requirements. *See generally* C.R.S. § 5-18-101, *et seq*. Instead, it allows private parties to "bring an action to enforce any obligation a consumer reporting agency has to a consumer . . . under [the CCRA]." *Id*. § 5-18-116(1). By contrast, multiple other statutes expressly grant the Administrator enforcement powers. *See, e.g., id.* § 5-16-117 (detailing powers and duties of Administrator under Article 16); *id.* § 5-17-111 ("This article 17 shall be enforced by the administrator . . . ."); *id.* § 5-20-114 (providing for administrative enforcement by the Administrator in connection with student loans); *id.* § 5-20-117 ("The administrator may bring a civil action against a student loan servicer for any violation of this part 1."); *id.* § 5-21-113 ("The administrator may bring a civil action against a mortgage servicer or any other person for any violations of this article 21."). Nor have Plaintiffs identified any other legal authority that grants the Administrator power to enforce the CCRA's limitation on medical debt reporting. And there is none: the Administrator lacks a particular duty to enforce the CCRA. *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (state official protected by sovereign immunity where statute was instead enforced by private parties).

Similarly, Plaintiffs fail to allege the Administrator has a demonstrated willingness to enforce the CCRA's medical debt limitation. They point to no instance in which the Administrator has taken action against a credit reporting agency for improperly reporting medical debt in the nearly three years since the law's passage. Nor do they provide any example of the Administrator enforcing the CCRA's other limitations on credit reports, some of which have been in force for decades. *See* C.R.S. § 5-18-109 ("[A] consumer reporting agency shall not make any consumer

5

report containing any of the following items of information . . . ."); 1997 Colo. Legis. Serv. S.B. 97-133 § 6 (creating law regarding consumer report contents).

Instead, Plaintiffs argue that the Administrator indirectly enforces the CCRA's limitation on medical debt reporting through her enforcement of the CFDCPA. They say she "gives life" to the CCRA by enforcing the CFDPCA Disclosure law, which requires collectors to inform consumers about the CCRA's reporting limitation, and the CFDCPA Misrepresentation law, which bars collectors from falsely telling consumers that their medical debt will be included in credit reports. Doc. 15 ¶¶ 30-33. However, the fact that these laws all concern related subject matter does not create a "particular duty" for the Administrator to enforce the CCRA itself. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 327 (5th Cir. 2024) ("[O]ur [*Young*] analysis is provision-by-provision: The officer must enforce the particular statutory provision that is the subject of the litigation." (quotation marks omitted)). This is evident from the theory underlying *Young*, which applies only when a plaintiff seeks prospective relief against an official engaged in an ongoing violation of federal law. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). If a state official does not enforce the specific statute challenged as unconstitutional, then they are not engaged in an ongoing violation of federal law by virtue of that statute's enforcement. Applied here, when the Administrator enforces the CFDCPA, she ensures that debt collectors communicate truthfully with consumers about Colorado law on medical debt reporting. Even assuming the CCRA violated federal law, the Administrator herself does not do so by requiring collectors to make accurate representations about that law's contents.

The Tenth Circuit's decision in *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007), does not support Plaintiffs' theory. *See* Doc. 15 ¶ 35. There, a federally

recognized tribe challenged a state policy that did not recognize tribally issued motor vehicle registrations, which had resulted in tribally licensed vehicles being cited for violating state law requiring all vehicles to be properly registered. *Id.* at 820-21. The Court concluded that all defendants had a sufficient connection to the law's enforcement for *Young* to apply: two of the three defendants had made the decision to deny the validity of tribal registrations, and the third oversaw enforcement of state traffic laws. *Id.* at 828. Here, by contrast, the Administrator has neither decision-making nor enforcement authority over the challenged portion of the CCRA.

Plaintiffs also claim the Administrator could use the Colorado Consumer Protection Act's general ban on unfair and deceptive practices to enforce the CCRA, Doc. 19 at 2 (citing C.R.S. § 6-1-105(rrr)), but the Administrator does not enforce the Consumer Protection Act. *See* C.R.S. § 6-1-103 (providing for enforcement by the attorney general and district attorneys); *id.* § 6-1-113 (allowing suit by private parties). Plaintiffs cite cases in which they allege the "Administrator has demonstrated a willingness to exercise [a] duty under the [Consumer Protection Act] in cases in which the Administrator was a co-plaintiff." Doc. 19 at 2. However, in the cases Plaintiffs cite, the Consumer Protection Act claims were brought by the Attorney General, while the Administrator brought claims under different statutes that she does enforce, like the CFDCPA and Consumer Credit Code. *See State ex rel. Coffman v. Castle L. Grp., LLC*, 375 P.3d 128, 130 (Colo. 2016) (litigation involving Consumer Protection Act and CFDCPA claims); *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, No. 20CA1692, 2025 WL 3725122, at *2 (Colo. App. Dec. 24, 2025) (complaint alleged claim under "the Credit Code, § 5-6-112, C.R.S. 2025," which provides for Administrator enforcement); *State ex rel. Weiser v. Castle L. Grp., LLC*, 457 P.3d 699, 706 (Colo. Ct. App. 2019) (noting the state also brought "claims under the Colorado Fair

Debt Collection Practices Act"); *see also State v. The Castle Law Group, LLC*, No. 2014CV32763, 2017 WL 3449241, at *1 (Colo. Dist. Ct. Apr. 04, 2017) (explaining that the Castle Law Group litigation involved "two Plaintiffs: the State of Colorado, through its Attorney General (asserting consumer protection and antitrust claims); and Julie Ann Meade, the Administrator of the Colorado Uniform Consumer Credit Code (asserting fair debt collection practices claims)"). Thus, even assuming a state official could use the Consumer Protection Act to enforce the CCRA, the Administrator would not be the official to do so.

Finally, Plaintiffs' vague allegations about the Administrator's enforcement of "HB 23-1126," the legislation that amended both the CCRA and the CFDCPA concerning medical debt, cannot meet their burden to show *Young* applies. *E.g.*, Doc. 15 ¶ 34 (alleging "any workarounds that creditors or debt collectors may use to evade HB 23-1126 . . . could be stopped and punished by the Administrator"); *id.* ¶ 118 ("If debt collectors or creditors attempt to evade HB 23-1126's rules, the Administrator may . . . raise claims in enforcement proceedings to deter or punish creditor and debt collector evasion of HB 23-1126."). The statutes themselves show the Administrator enforces the CFDCPA, but not the CCRA. Plaintiffs' "bare legal assertion[s]," made "without any supporting factual allegations," cannot trump the statutory text. *See Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (affirming dismissal based on official's sovereign immunity where the plaintiff did not "cite to any provision of Colorado law establishing a connection" to enforcement of the challenged law, the law was in fact implemented by other parties, and the plaintiff had not alleged any instances of the official enforcing the challenged law). All Plaintiffs' claims concerning the CCRA should be dismissed as barred by sovereign immunity.

8

## II.     Plaintiffs do not have standing to bring their CCRA claims.

For similar reasons, Plaintiffs lack standing to assert their CCRA claims. To have standing, Plaintiffs must show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Here, Plaintiffs have not plausibly alleged that any injury they suffer from the CCRA's limitation on medical debt reporting is traceable to the Administrator or likely to be redressed by an injunction against her.

As discussed above, the Administrator does not enforce the challenged CCRA provision. Thus, any injury Plaintiffs suffer from it is not traceable to her. *See Frank v. Lee*, 84 F.4th 1119, 1135 (2023) (explaining that for causation element of standing to be satisfied, the defendant must have authority to enforce the challenged law). Similarly, Plaintiffs' alleged injuries would not be redressed by enjoining the Administrator from enforcing the CCRA, since she does not enforce it to begin with. Private parties do, and an injunction against the Administrator would not restrain their action. S*ee* C.R.S. § 5-18-116 (providing for CCRA enforcement through private litigation or arbitration); *see also Whole Women's Health*, 595 U.S. at 44 ("[N]o court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." (quotations omitted)).

Because this Court lacks jurisdiction over Plaintiffs' CCRA claims, they should be dismissed.

## III.    Plaintiffs' claims challenging the CFDCPA on First Amendment grounds fail.

Plaintiffs challenge both the CFDCPA Disclosure law and the CFDCPA Misrepresentation law on First Amendment grounds. *See* C.R.S. § 5-16-105(e)(I), (requiring disclosure of Colorado law on medical debt reporting); *id.* § 5-16-107(1)(r)(I) (prohibiting debt collectors from falsely

9

representing Colorado law concerning medical debt to consumers). Neither provision violates the First Amendment.

> **a. Plaintiffs' Free Speech challenge to the CFDCPA Disclosure law fails as a matter of law because that law requires the disclosure of commercial speech that is purely factual and uncontroversial.**

Plaintiffs' First Amendment challenge to the CFDCPA Disclosure law fails because the statute simply requires them accurately to disclose Colorado law—that medical debt cannot be reported to credit bureaus or factor into credit scores absent narrow exceptions. This is the disclosure of factual, uncontroversial commercial speech. Such compelled disclosures are reviewed under a deferential standard of review subject to less scrutiny than even ordinary commercial speech, which the law easily passes. *Zauderer*, 471 U.S. at 651.

Plaintiffs agree that the disclosure requirement involves commercial speech. Doc. 15 at 40-41, ¶ 132. The Supreme Court has distinguished between the government's restriction of commercial speech that is not false, misleading, or regarding unlawful activity and the government's required disclosures of accurate information in the commercial context. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249-50 (2010). The government's restriction of commercial speech is ordinarily subject to intermediate scrutiny review, but compelled commercial speech is subject to more deferential review. *Id*. This is because "[t]he First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed." *Zauderer*, 471 U.S. at 651 n.14. Under *Zauderer*, purely factual and noncontroversial compelled commercial disclosures are permissible if they are (1) reasonably related to the government's interest, and (2) not unjustified or unduly burdensome.

*Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755, 768-69 (2018); *see also Milavetz, Gallop & Milavetz, P.A.*, 559 U.S. at 249–50.

The medical debt disclosure at issue here satisfies these requirements. First, the information required to be disclosed is an objective legal fact: Colorado law prohibits consumer credit agencies from reporting medical debt except in narrow circumstances. "Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides," Plaintiffs' "constitutionally protected interest in *not* providing" this factual information "is minimal." *Zauderer*, 471 U.S. at 651 (citations omitted).

Second, the content of those statutory requirements is uncontroverted and not subject to good-faith dispute. It is just the law. Courts define information as "uncontroversial" if its truth is not disputed and it is not part of a live ideological debate. *NetChoice v. Weiser*, 808 F. Supp. 3d 1223, 1235-36 (D. Colo. 2025). For instance, in *CompassCare v. Hochul*, the Second Circuit upheld against a facial First Amendment challenge a statute requiring employers to provide notice in employee handbooks about employee rights and remedies under a state anti-discrimination law concerning "discrimination based on an employee's or a dependent's reproductive health decision making." 125 F.4th 49, 54 (2d Cir. 2025). The court concluded requiring disclosure of "the terms of employment under New York law" amounted to "disclosure only of purely factual and uncontroversial information about the terms under which services w[ould] be available." *Id*. at 65 (quotation marks and alterations omitted). Importantly, in evaluating whether a required disclosure about an existing law is "uncontroversial," the court does not consider the law's underlying policy judgment, even if that was controversial. *See id*. ("Of course, the policy judgment that motivated the Act may be 'controversial' . . . . But the existence and contents of the Act – and an employer's

11

obligation to comply with it – is not itself controversial."). Plaintiffs dispute the legislature's policy judgment here, but that does not render the required disclosure of Colorado's limitation on medical debt reporting "controversial" for First Amendment purposes.

Third, the CFDCPA Disclosure law is reasonably related to Colorado's legitimate interest in consumer protection. The statute ensures that consumers understand their rights regarding medical debt and credit reporting, preventing confusion and protecting them from inaccurate credit information. Courts have consistently recognized that informing consumers of their legal rights and obligations serves a substantial government interest. *See Zauderer*, 471 U.S. at 651 (upholding disclosure requirements aimed at preventing consumer deception); *United States v. Wenger*, 427 F.3d 840, 850 (10th Cir. 2005) (same). By requiring debt collectors to disclose that medical debt cannot be reported to credit bureaus except under narrow circumstances, Colorado advances its goals of promoting transparency, preventing deception, and avoiding harm to consumers' creditworthiness.

Fourth, the complaint does not plausibly allege that the CFDCPA Disclosure law is unduly burdensome. Doc. 15 at 33-34, ¶ 99; *cf. CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 849 (9th Cir. 2019) (holding a disclosure requirement not unduly burdensome when it "does not interfere with advertising or threaten to drown out messaging"). Instead, Plaintiffs' main concern appears to be that the disclosure prevents circumvention of the CCRA's substantive limitations on medical debt reporting. *E.g.*, Doc. 15 ¶ 132.

Plaintiffs contend that the CFDCPA Disclosure law does not concern "purely factual" information because it could "become inaccurate," as "legal developments can change the underlying medical debt reporting landscape." Doc. 19 at 3. But the possibility that the regulatory

12

landscape may evolve does not invalidate a factual, noncontroversial disclosure requirement. If Plaintiffs' theory were accepted, countless longstanding disclosure regimes, many of which rely on existing legal frameworks, would be perpetually vulnerable to facial attacks simply because the law might change in the future. And though Plaintiffs here "contend the underlying prohibition [on reporting medical debt] is invalid," as discussed above, this Court lacks jurisdiction over that challenge. As a result, any prospect that the disclosure could become nonfactual because Colorado law may change in the future is purely speculative. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiffs lack constitutional standing where alleged harm is "conjectural or hypothetical").

Because the medical debt disclosure is factual, uncontroversial, and reasonably related to informing consumers about their legal rights, Plaintiffs cannot state a First Amendment claim. The Court should dismiss Plaintiffs' First Amendment challenge to the CFDCPA Disclosure law.

### b. **Plaintiffs' Free Speech challenge to the CFDCPA Misrepresentation law fails because the law only restricts false or misleading commercial speech.**

Plaintiffs' First Amendment challenge to the CFDCPA Misrepresentation law fails because false or misleading commercial speech is not protected speech. *See* C.R.S. § 5-16-107(1)(r)(I) (protecting consumers against debt collectors that falsely represent that, under Colorado law, medical debt will be included in a consumer report or factored into a credit score absent certain narrow exceptions). Accordingly, this claim fails as a matter of law.

There is no First Amendment right to make false or misleading representations in connection with debt collection, because such speech is not protected speech. *In re R. M. J.*, 455 U.S. 191, 203 (1982) (false or misleading commercial speech "may be prohibited entirely"). Plaintiffs argue that the statute discriminates based on content (because it applies only to medical

13

debt) and purpose (because it includes an exception for large home purchases). *E.g.* Doc. 15 ¶ 58. But legislators are not required to regulate all forms of deceptive speech at once. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 387–90 (1992) (explaining that the "prohibition against content discrimination . . . applies differently in the context of proscribable speech than in the area of fully protected speech"). Selective regulation of specific harms, such as misleading representations about medical debt, is permissible so long as it does not favor or disfavor particular viewpoints. *Id.*; *see also Chaker v. Crogan*, 428 F.3d 1215, 1226 (9th Cir. 2005) ("[T]he First Amendment's core requirement of viewpoint neutrality [applies] even though the statute regulates otherwise unprotected speech.").

The CFDCPA Misrepresentation law does not prohibit speech based on viewpoint. It prohibits only false or misleading representations about whether medical debt will be included in a credit report or score under Colorado law. Debt collectors remain free to express their views about the morality of medical debt, healthcare access, or their political views on these issues—so long as they do not misrepresent whether medical debt will be included in a credit report or score under Colorado law.

Plaintiffs again assert the CFDCPA Misrepresentation law could become "inaccurate." Doc. 19 at 3. But unlike the CFDCPA Disclosure law, this provision does not require any particular speech that might become inaccurate if Colorado law changed. Instead, it simply restricts collectors from "mak[ing] a false, deceptive, or misleading representation that [a consumer's] medical debt will be included in a consumer report . . . or factored into a consumer's credit score." C.R.S. 5-16-107(1)(r)(I). Because the law only prohibits representations by debt collectors that are "false, deceptive, or misleading," it regulates unprotected speech.

Because the statute regulates unprotected speech and is viewpoint neutral, it does not violate the First Amendment. Plaintiffs' First Amendment challenge to the CFDCPA Misrepresentation law should be dismissed.

## CONCLUSION

Plaintiffs' Claims One and Two concerning the CCRA should be dismissed, and Claim Two concerning their First Amendment challenges to the CFDCPA should be dismissed.

DATED this 13th day of March, 2026.

                                             PHILIP J. WEISER
                                             Attorney General, State of Colorado

                                             For the Attorney General:

                                             */s/ Talia Kraemer*
                                             **Kevin J. Burns**
                                             **Talia Kraemer**
                                             Senior Assistant Attorneys General
                                             Ralph L. Carr Colorado Judicial Center
                                             1300 Broadway, 9th Floor
                                             Denver, CO 80203
                                             720-508-6000
                                             Kevin.Burns@coag.gov
                                             Talia.Kraemer@coag.gov