# Bro//nstein

**Brownstein Hyatt Farber Schreck, LLP**

303.223.1100 main
675 Fifteenth Street, Suite 2900
Denver, Colorado  80202

May 29, 2026

Sarah J. Auchterlonie
Attorney At Law
sauchterlonie@bhfs.com

The Honorable R. Brooke Jackson
Byron G. Rogers United States Courthouse, C252
1961 Stout Street
Denver, Colorado  80294

**RE:    *ACA Int'l et al. v. Fulford*, U.S. District Court Case No. 1:25-cv-03530-RBJ**

Your Honor:

Plaintiffs ACA International and Fresno Credit Bureau ("Plaintiffs") submit this responsive letter pursuant to the Court's Practice Standards. Defendants Martha Fulford, Administrator of Colorado's Uniform Consumer Credit Code (the "Administrator"), and Philip J. Weiser, Colorado's Attorney General (the "Attorney General"), ask the Court to dismiss Plaintiffs' claims for declaratory and injunctive relief halting Defendants from taking action related to a HB 23-1126 that violates Plaintiffs' and ACA member's federal and Constitutional rights. Defendants assert that sovereign immunity and lack of standing bars our challenge to the Colorado Consumer Credit Reporting Act's ("CO Cr. Rep. Act") prohibition of medical debt reporting ("Medical Debt Reporting Ban"). Defendants also argue that the Court should dismiss under Rule 12(b) Plaintiffs' First Amendment challenge to the Colorado Fair Debt Collection Practices Act ("CO Fair Debt Act") provisions that suppress speech and now require collectors to print a mandatory statement telling consumers that all medical debt credit reporting is suppressed. The Court should not dismiss these claims because Defendants seek only injunctive relief, have a sufficient enforcement connection to the challenged statutory scheme, Plaintiffs' injuries are traceable to and redressable by relief against Defendants, and the complaint plausibly alleges First Amendment violations.

## I.    Sovereign Immunity Does Not Bar Plaintiffs' Challenge to HB 23-1126 Because the Administrator and Attorney General Have a Sufficient Enforcement Connection.

HB 23-1126 effected 3 principal changes to law and functions with other Colorado laws to suppress speech about medical debt. In addition to creating the Medical Debt Reporting Ban in the CO Cr. Rep. Act, HB 23-1126 amended the CO Fair Debt Act to (1) prohibit debt collectors from telling consumers that medical debt will be included in a consumer report, C.R.S. § 5-16-107(1)(r)(I), ("Speech Prohibition") and (2) compel a specific statement in their first written notice that "Colorado law prohibits credit bureaus from reporting medical debt or factoring medical debt into a credit score" absent certain exceptions. C.R.S. § 5-16-105(3)(e)(I) ("Compelled Disclosure").

As part of their official duties, Defendants "giv[e] effect to" the CO Cr. Rep. Act's Medical Debt Reporting Ban in several ways, explained in the examples below. *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007).

***First***, the Administrator's enforcement of the CO Fair Debt Act amendments is the mechanism for conforming consumer behavior with the CO Cr. Rep. Act's Medical Debt Reporting Ban. The Administrator has authority to enforce compliance with the CO Fair Debt Act, *see* C.R.S. § 5-16-103, including by setting "standards of conduct for licensees and collection notices and forms." C.R.S. § 5-16-114. For example, when issuing licenses to debt collectors, the Administrator requires applicants to provide a sample first notice letter, which must include the statement that

1

51605049.3

The Honorable R. Brooke Jackson
May 29, 2026
Page 2

medical debt information will not be reported. C.R.S. § 5-16-105(e)(I). Without this sample letter containing the Compelled Disclosure, the Administrator will not issue a license. *Id*. The CO Fair Debt Act amendments ensure that consumers receive—and act upon—the message that medical debt will not appear on credit reports, and this behavior-shaping mechanism is what gives life to the reporting restriction. The Administrator's enforcement of the CO Fair Debt Act provisions thus "assist[s] in giving effect to" the Medical Debt Reporting Ban in the CO Cr. Rep. Act and therefore opens her to suit under the *Ex Parte Young* exception. *See Prairie Band* 476 F.3d at 828. This case is materially different from a suit against an official who has no role in enforcing any part of the challenged statutory scheme. *Compare id. with Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024).

**Second**, the Attorney General can sue anyone, including ACA member creditors, collectors, or consumer reporting agencies ("CRAs"), under the Colorado Consumer Protection Act ("CCPA") for "engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." C.R.S. § 6-1-105(rrr).[1] For example, after the Colorado Medical Debt Reporting Ban and the CO Fair Debt Act amendments became effective, a CRA's reporting of medical debt would fall into this broad prohibition, clearly indicating the Attorney General's "duty" in this context. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021). The Attorney General contends that he has no demonstrated willingness of using his CCPA authority. Not so. The CCPA is a "broad remedial statute," and the list of actions that explicitly qualify as "unfair, unconscionable . . ." in C.R.S. § 6-1-105 "is not exhaustive." *Showpiece Homes Corp. v. Assurance Co. of Am*., 38 P.3d 47, 56 (Colo. 2001). And the Attorney General has a demonstrated history of using the CCPA to bring suit against entities engaging in unfair trade practices. *See, e.g., State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, No. 20CA1692, 2025 WL 3725122, at *1 (Colo. App. Dec. 24, 2025); *State ex rel. Weiser v. Castle L. Grp., LLC*, 457 P.3d 699 (Colo. App. 2019); *State ex rel. Coffman v. Castle L. Group, LLC*, 375 P.3d 128 (Colo. 2016). This prospect of enforcement is enough to regulate CRA behavior and further "giv[es] effect to" the CO Cr. Rep. Act's reporting restriction. *See Prairie Band*, 476 F.3d at 828.

The Administrator's enforcement of the CO Cr. Rep. Act's reporting requirement through conditioning licensing on compliance with the CO Fair Debt Act amendments, and the Attorney General's authority to pursue CCPA enforcement against CRAs whose reporting of medical debt falls within the statute's broad prohibition on unfair, deceptive, or fraudulent practices demonstrates both Defendants' particular duty to enforce HB 23-1126 and their demonstrated willingness to exercise that duty. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021).

## II. <u>Plaintiffs Have Standing Because Their Injuries Are Traceable to Defendants and Are Redressable by Prospective Relief Against Them.</u>

The creditors, collectors, and CRAs that comprise ACA's membership are injured from the same enforcement connection described above: the Administrator's ongoing authority over debt collectors, exercised through licensing and supervision, creates conditions that suppress the reporting of medical debt. Due to the Administrator's enforcement efforts, collectors can share no

---

[1] Relatedly, the Attorney General may also bring actions against debt collectors under the same statute should those collectors engage in "any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice." C.R.S. § 6-1-105(rrr). Such practices would presumably include debt collectors failing to include the mandatory disclosure provisions outlined in the CFDCPA. C.R.S. § 5-16-103. As a result, the Attorney General possesses authority to enforce the full statutory scheme and categorically foreclose the reporting of medical debt information.

51605049.3

The Honorable R. Brooke Jackson
May 29, 2026
Page 3

medical debt information. Creditors cannot receive medical debt information. And CRAs that report medical debt face the threat of being sued by the Attorney General under the CCPA.

Redressability is likewise satisfied because an injunction against the Administrator would stop her enforcement of the CO Fair Debt Act concerning medical debt and prevent her from punishing noncompliance with those unlawful requirements. For example, an injunction would likewise bar the Attorney General from bringing suit under the CCPA concerning medical debt. Enjoining use of those enforcement mechanisms would relieve Plaintiffs' injuries flowing from the CO Cr. Rep. Act's unlawful reporting restriction and the CO Fair Debt Act amendments. Such an injunction would also alleviate the injuries resulting from the CO Fair Debt Act amendments' violation of the First Amendment.

Finally, Plaintiffs plausibly allege a credible threat of enforcement by Defendants. Here, the Administrator has statutory enforcement authority over the CO Fair Debt Act debt collection provisions, and the Administrator has already enforced compliance with such provisions through licensing, supervisory audits, and license-related sanctions. The Administrator has already demonstrated a credible threat of enforcement by requiring applicants seeking a debt collector license to provide a sample first notice letter, which must include the statement that medical debt information will not be reported. C.R.S. § 5-16-105(e)(I).

III. **Plaintiffs State Plausible First Amendment Claims Because HB 23-1126 Compels and Restricts Debt Collection Speech.**

The CO Fair Debt Act Requirements are Not Immune from First Amendment Scrutiny. This Court must determine the merits of Plaintiffs' underlying argument—that the Medical Debt Reporting Ban is unconstitutional and preempted—in order to determine the validity of the CO Fair Debt Act claims.

**Compelled Disclosure.** Defendants argue that the compelled disclosure is "accurate, objective information about existing Colorado law." But the compelled statement is controversial on its face and vulnerable to becoming inaccurate given that legal developments can change the underlying medical debt reporting landscape. The government can require private entities to disclose only truthful and non-controversial information. It cannot require private entities to disclose inaccurate information. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 768.

Speech Prohibition. Likewise, the prohibition on saying that medical debts may be credit reported is also subject to First Amendment scrutiny. Plaintiffs contend in the instant suit that the Colorado Medical Debt Reporting Ban is unlawful. Should the Court agree, the CO Fair Debt Act speech prohibition would no longer be accurate. Thus, the prohibition does not merely govern fraudulent speech but instead requires arguably inaccurate information. *See Nat'l Inst. Of Fam & Life Advocs.*, 585 U.S. at 768. This Court must determine the merits of Plaintiffs' underlying argument—that the Medical Debt Reporting Ban is unconstitutional and preempted—in order to determine the validity of the CO Fair Debt Act claims.

Ultimately, Defendants' challenge in this context is premature because the Court cannot determine whether the government-mandated speech required by the CO Fair Debt Act provisions is "noncontroversial" or "inaccurate" until the Court first determines whether the underlying Medical Debt Reporting Ban is lawful.

51605049.3

The Honorable R. Brooke Jackson
May 29, 2026
Page 4

Finally, a successful challenge by the Administrator will not narrow discovery in this matter. Notwithstanding the result of a motion to dismiss, the scope of discovery will be the same. Defendant's challenge here will not serve to streamline the resolution of this matter.

Respectfully,

 */s/ Sarah Auchterlonie*
Sarah J. Auchterlonie

51605049.3