**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03530-RBJ

ACA INTERNATIONAL and FRESNO CREDIT BUREAU d/b/a CREDITORS BUREAU USA,

      Plaintiffs,

v.

ADMINISTRATOR OF THE UNIFORM CONSUMER CREDIT CODE, MARTHA FULFORD, in her official capacity, ATTORNEY GENERAL OF COLORADO, PHILIP WEISER, in his official capacity,

      Defendants.[1]

---

**MOTION TO DISMISS IN PART THE SECOND AMENDED COMPLAINT**

---

Defendants Colorado Uniform Consumer Credit Code Administrator Martha Fulford ("the Administrator"), and Attorney General Philip Weiser ("the Attorney General") move to dismiss in part the Second Amended Complaint, Doc. 28, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Certificate of Conferral under Civ. Practice Standard 7.1B:** Undersigned counsel certifies that they conferred in good faith with counsel for Plaintiffs, who oppose dismissal. Defendants were authorized to file this motion after pre-motion letters to the Court. Docs. 33-35.

**INTRODUCTION**

Plaintiffs challenge legislation about consumer reporting of medical debt information. In 2023, the Colorado General Assembly amended two statutes to add new provisions relating to medical debt. First, the Consumer Credit Reporting Act ("CCRA") was amended to prohibit

---

[1] Attorney General Weiser's name is misspelled in the caption as "Phillip Weiser."

consumer reporting agencies from making consumer reports that contain adverse medical debt information, with certain exceptions. C.R.S. § 5-18-109(1)(f)(I). Second, two new provisions were added to the Colorado Fair Debt Collection Practices Act ("CFDCPA"). One enlarged the existing list of deceptive conduct that is prohibited in connection with debt collection, to include misrepresenting that medical debt will be included in a consumer report or credit score. *Id.* § 5-16-107(1)(r)(I) (the "CFDCPA Misrepresentation law"). The other requires debt collectors to disclose in writing that Colorado law prohibits credit bureaus from reporting medical debt or including such debt in credit scores, absent an exception. *Id.* § 5-16-105(3)(e)(I) (the "CFDCPA Disclosure law"). Plaintiffs assert that these amendments to the CCRA and CFDCPA are preempted by the federal Fair Credit Reporting Act ("FCRA") and violate the First Amendment's Free Speech Clause.

Plaintiffs' claims should be dismissed in part. All claims concerning the CCRA should be dismissed under Rule 12(b)(1), because they are barred by sovereign immunity. Defendants do not enforce the CCRA, which instead is enforced through a private right of action. Nor have Plaintiffs plausibly alleged that Defendants have a demonstrated willingness to enforce the CCRA. As such, the *Ex parte Young* exception to sovereign immunity does not apply to Plaintiffs' CCRA claims.

For similar reasons, Plaintiffs lack standing to assert those claims. Any injury Plaintiffs suffer due to the CCRA is not traceable to Defendants, because they do not enforce it. Nor would enjoining Defendants from enforcing the CCRA redress Plaintiffs' claimed injury. While Plaintiffs allege the Attorney General might use his general consumer protection authority to enforce the CCRA in the future, such hypothetical future injury is too speculative to support standing.

Finally, Plaintiffs' First Amendment challenges to the CFDCPA provisions should be dismissed under Rule 12(b)(6), because Plaintiffs do not state a plausible claim for relief. The

CFDCPA Disclosure law requires only the disclosure of accurate, objective information about existing Colorado law. Such compelled commercial speech is reviewed under the deferential standard set forth in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), which the CFDCPA Disclosure law easily satisfies. And the CFDCPA Misrepresentation law prohibits only false or misleading commercial speech, which states are free to regulate consistent with the First Amendment. As a result, these claims should be dismissed.

**ARGUMENT**

## I.      Legal Standards

**Fed. R. Civ. P. 12(b)(1).** Plaintiffs bear the burden of establishing subject matter jurisdiction, because they are "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). To do so, Plaintiffs must sufficiently allege both that an exception to Eleventh Amendment immunity applies and Article III standing. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (Eleventh Amendment); *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012) (standing).

A Rule 12(b)(1) motion may present either a facial or factual attack on jurisdiction. *See Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). Because Defendants raise a facial challenge, the Court should accept the Second Amended Complaint's well-pleaded factual allegations as true, but it need not accept legal conclusions cast as factual allegations. *Id.* at 1206.

**Fed. R. Civ. P. 12(b)(6).** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is not required to accept conclusory or unsupported allegations. *See Twombly*,

3

550 U.S. at 555. A claim may be dismissed "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

## I.   Plaintiffs' challenge to the CCRA is barred by the Eleventh Amendment.

Eleventh Amendment sovereign immunity "precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009). State officials sued in their official capacities are immune because they are "an arm of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), and "such suits are no different from a suit against the State itself," *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quotations omitted).

The only potentially applicable exception to this immunity—*Ex parte Young*, 209 U.S. 123 (1908)—does not apply here. Under *Young*, the state official sued must have "some connection with the enforcement of the challenged action." *Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) (quotations omitted). Specifically, they must have (1) "a particular duty to enforce the statute" and (2) "a demonstrated willingness to exercise that duty." *Hendrickson*, 992 F.3d at 965 (quotations omitted). As to Defendants, Plaintiffs have not adequately alleged either.

### A.  Defendants lack a particular duty to enforce the CCRA.

The CCRA does not authorize either Defendant to enforce its requirements. *See generally* C.R.S. § 5-18-101, *et seq*. Instead, it allows suit by private parties. *See id*. § 5-18-116(1). Where a statute is enforced solely through a private right of action, suit is not permitted against state officials under *Ex parte Young*. *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (state official immune from suit where statute enforced by private parties).

4

Nor have Plaintiffs identified any other law that confers on Defendants a particular duty to enforce the CCRA. As to the Administrator, Plaintiffs point to her enforcement of the Uniform Consumer Credit Code ("UCCC"), codified in Title 5 of the Colorado Revised Statutes. But the Administrator only enforces Articles 1 through 9 of Title 5, and the CCRA is codified in Article 18. *See Pro. Background Screening Ass'n v. Weiser*, No. 25-CV-00295-PAB-CYC, 2026 WL 787585, at \*5 (D. Colo. Mar. 20, 2026) (holding Administrator's UCCC enforcement power does not encompass the CCRA). Plaintiffs highlight the Administrator's CFDCPA enforcement powers, Doc. 28 ¶ 29, but that law does not enable her to enforce the CCRA, either. Plaintiffs' conclusory allegations about the Administrator's enforcement of "HB 23-1126," the legislation that amended both the CCRA and the CFDCPA concerning medical debt, similarly do not suffice. *E.g.*, Doc. 28 ¶ 125 ("Defendant has enforced and made it her unambiguous intention to continue to enforce HB 23-1126."). "[B]are legal assertion[s]," made "without any supporting factual allegations," cannot trump the statutory text. *See Peterson*, 707 F.3d at 1206.

Instead, Plaintiffs argue that the Administrator indirectly enforces the CCRA's limitation on medical debt reporting by enforcing the CFDPCA Disclosure law, which requires collectors to inform consumers about the CCRA's reporting limitation, and the CFDCPA Misrepresentation law, which bars collectors from falsely telling consumers that their medical debt will be included in credit reports. Doc. 28 ¶¶ 33-35. But the fact that these laws all concern related subject matter does not create a "particular duty" for the Administrator to enforce the CCRA itself. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 327 (5th Cir. 2024) ("[O]ur [*Young*] analysis is provision-by-provision: The officer must enforce the particular statutory provision that is the subject of the litigation." (quotation marks omitted)). This is evident from the theory underlying *Young*, which

applies only when a plaintiff seeks prospective relief against an official engaged in an ongoing violation of federal law. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). If a state official does not enforce the specific statute challenged as unconstitutional, then they are not engaged in an ongoing violation of federal law by virtue of that statute's enforcement. Applied here, even assuming the CCRA violates federal law, the Administrator herself does not do so by requiring collectors to make accurate representations about that law's contents.

The Tenth Circuit's decision in *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007), does not support Plaintiffs' theory. *See* Doc. 28 ¶ 35. There, a federally recognized tribe challenged a state policy that did not recognize tribally issued motor vehicle registrations, which had resulted in tribally licensed vehicles receiving traffic citations for violating state law requiring all vehicles to be properly registered. *Id.* at 820-21. The Court concluded that all defendants had a sufficient connection to the law's enforcement for *Young* to apply: two of the defendants made the decision to deny the validity of tribal registrations, and the third oversaw enforcement of state traffic laws. *Id.* at 828. Here, by contrast, the Administrator has neither decision-making nor enforcement authority over the challenged portion of the CCRA.

As to the Attorney General, Plaintiffs rely on his Colorado Consumer Protection Act ("CCPA") authority to target unfair or deceptive trade practices, speculating that he may someday seek to use those powers to enforce the CCRA's limitations on medical debt reporting. Doc. 28 ¶¶ 42-46. Yet this general power to address unfair or deceptive trade practices is not a "particular duty" to enforce the CCRA. It is more in the nature of a general law enforcement authority, on which a plaintiff may not rely to sue a state official as a stand-in for the state. *See Prof. Background Screening Ass'n*, 2026 WL 787585, at *4 (general power to enforce state laws did not "give rise

to a 'particular duty' to enforce the CCRA"). While an official's enforcement connection to a challenged law need not be specified in the law itself, nonetheless, if the challenged law expressly confers enforcement authority over one set of actors, "a plaintiff cannot sue a different official absent some evidence that the defendant is connected to the enforcement of the challenged law." *Peterson*, 707 F.3d at 1207. Here, the CCRA expressly authorizes private parties to enforce it, and Plaintiffs have not alleged any evidence that the Attorney General has an actual—as opposed to speculative—enforcement connection. The hypothetical prospect of indirect enforcement through the Attorney General's broad powers under an unrelated statute does not satisfy *Ex parte Young*. *See California Mortg. Ass'n v. Bonta*, No. 2:25-CV-02614-DAD-CKD, 2026 WL 1601601, at *7-8 (E.D. Cal. June 4, 2026) (attorney general's broad enforcement power over "unlawful, unfair, or fraudulent" business practices did not create "particular duty" to enforce separate law regulating mortgage-related practices, even if attorney general "could conceivably pursue" enforcement of the separate law through those broad powers); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 43-44 (2021) ("series of hypotheticals" insufficient for Ex parte Young).[2]

Plaintiffs also theorize that the Attorney General might use his authority under the federal FCRA, which enables him to pursue enforcement actions to address FCRA violations, to enforce the CCRA's limitation on medical debt reporting. Doc. 28 ¶ 47; *see* 15 U.S.C. § 1681s(c)(1). To begin with, it is unclear how Plaintiffs think the Attorney General could use his power to enjoin

---

[2] As a result, Plaintiffs' speculation that the Administrator "may coordinate with the Attorney General" in a hypothetical CCPA action does not show that the Administrator has a particular duty to enforce the CCRA, either. Doc. 28 ¶ 38. Further, Plaintiffs' theorized "coordination" seems to be that the Administrator might "exchange information" with the Attorney General for a CCPA investigation. *Id.* ¶ 37. But to conclude that a state official has a "particular duty to enforce" a law simply because they might share information with some other entity pursuing enforcement would stretch the concept of "enforcement" beyond recognizable limits.

FCRA violations to *enforce* the challenged CCRA requirements, given Plaintiffs' belief that they are preempted by and *invalid* under FCRA. In any event, Plaintiffs' FCRA theory appears premised on a misunderstanding. Plaintiffs theorize that the Attorney General could take action under FCRA against (1) a person who falsely certifies that they have a permissible purpose for seeking medical debt information on a credit report, or (2) a "furnisher" of medical information that provides information to a consumer reporting agency but fails to notify that agency that it is a "medical information furnisher" under FCRA. Doc. 28 ¶ 47; *see* 15 U.S.C. § 1681s-2(a)(9); § 1681q. However, this independent enforcement authority granted to the Attorney General under FCRA does not implement the challenged portion of the CCRA. The CCRA provision Plaintiffs challenge only imposes restrictions on credit reporting agencies, barring them from making consumer reports containing adverse medical debt information. C.R.S. § 5-18-109(1)(f). It does not impose requirements on those seeking such reports or furnishing information regarding medical debt to credit reporting agencies. As a result, any enforcement action against such parties would not amount to enforcing the challenged CCRA provision, which regulates only credit reporting agencies. Plaintiffs' theory—that enforcing FCRA effectively enforces the CCRA— misstates how these statutes operate and collapses the distinction between them.

**B. Defendants lack a demonstrated willingness to enforce the CCRA.**

Even if Plaintiffs adequately alleged that Defendants have a particular duty to enforce the CCRA, their CCRA claims independently fail because Defendants have no demonstrated willingness to enforce the CCRA's medical debt limitation. Plaintiffs point to no instance in which either Defendant has taken action against a credit reporting agency for improperly reporting medical debt in the three years since the law's passage. Nor do they provide any example of

Defendants enforcing the CCRA's other limitations on credit reports, some of which have been in force for decades. *See* C.R.S. § 5-18-109(1) ("[A] consumer reporting agency shall not make any consumer report containing any of the following items of information . . . ."); 1997 Colo. Legis. Serv. S.B. 97-133 § 6 (creating law regarding consumer report contents). Plaintiffs allege the Attorney General has pursued CCPA enforcement actions against "financial service providers," Doc. 28 ¶ 44, but those examples involve entirely different subject matter and do not show a "demonstrated willingness" to enforce the CCRA's limitations on medical debt reporting, *see id.* (suits involving higher education marketing and student loans, debt collection agreements, and payday lending). Plaintiffs' CCRA claims are barred by sovereign immunity.

## II.     Plaintiffs do not have standing to bring their CCRA claims.

For similar reasons, Plaintiffs lack standing to assert their CCRA claims. To have standing, Plaintiffs must show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Plaintiffs have not plausibly alleged that any injury they suffer from the CCRA's limitation on medical debt reporting is traceable to Defendants or likely to be redressed by an injunction against them.

As discussed above, Defendants do not enforce the challenged CCRA provision. Thus, any injury Plaintiffs suffer from it is not traceable to them. *See Frank v. Lee*, 84 F.4th 1119, 1135 (10th Cir. 2023) (explaining that for causation element of standing to be satisfied, the defendant must have authority to enforce the challenged law). Similarly, Plaintiffs' alleged injuries would not be redressed by enjoining Defendants from enforcing the CCRA, since they do not enforce it. Private parties do, and an injunction against Defendants would not restrain their action. S*ee* C.R.S. § 5-

18-116 (providing for CCRA enforcement through private litigation or arbitration); *see also Whole Women's Health*, 595 U.S. at 44 ("[N]o court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." (quotations omitted)).

Finally, Plaintiffs' alleged injury based on the prospect that the Attorney General might pursue CCPA enforcement is too speculative to support standing. To have standing, Plaintiffs must show they "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). The "threatened injury must be certainly impending"; "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Possible future injury is all Plaintiffs allege here: there is no evidence the Attorney General has ever used his CCPA powers to enforce the CCRA's limitations on medical debt reporting or has plans to do so in the future. Because Plaintiffs lack standing for their CCRA claims, they should be dismissed.

**III.    Plaintiffs' claims challenging the CFDCPA on First Amendment grounds fail.**

Plaintiffs challenge the CFDCPA Disclosure law and the CFDCPA Misrepresentation law on First Amendment grounds. *See* C.R.S. § 5-16-105(e)(I) (requiring disclosure of Colorado law on medical debt reporting); *id.* § 5-16-107(1)(r)(I) (prohibiting collectors from falsely representing Colorado law concerning medical debt to consumers). Neither violates the First Amendment.

**a.    The CFDCPA Disclosure law, which compels commercial speech that is purely factual and uncontroversial, passes First Amendment scrutiny.**

Plaintiffs' First Amendment challenge to the CFDCPA Disclosure law fails because the statute simply requires them accurately to disclose Colorado law—that medical debt cannot be reported to credit bureaus or factored into credit scores absent narrow exceptions. This is the disclosure of factual, uncontroversial commercial speech. Such compelled disclosures are

reviewed under a deferential standard of review subject to less scrutiny than even ordinary commercial speech, which the law easily passes. *Zauderer*, 471 U.S. at 651.

Plaintiffs agree that the disclosure requirement involves commercial speech. *E.g.* Doc. 28 ¶¶ 83-84. While the government's restriction of commercial speech is ordinarily subject to intermediate scrutiny review, compelled commercial speech is subject to more deferential review. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249-50 (2010). This is because "[t]he First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed." *Zauderer*, 471 U.S. at 651 n.14. Under *Zauderer*, purely factual and noncontroversial compelled commercial disclosures are permissible if they are (1) reasonably related to the government's interest, and (2) not unjustified or unduly burdensome. *Nat'l Inst. of Family & Life Advocs. v. Becerra*, 585 U.S. 755, 768-69 (2018); *see also Milavetz, Gallop & Milavetz, P.A.*, 559 U.S. at 249–50.

The CFDCPA Disclosure law satisfies these requirements. First, the information required to be disclosed is an objective legal fact: Colorado law prohibits consumer credit agencies from reporting medical debt except in narrow circumstances. "Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides," Plaintiffs' "constitutionally protected interest in *not* providing" this factual information "is minimal." *Zauderer*, 471 U.S. at 651 (citations omitted).

Second, the content of those statutory requirements is uncontroverted and not subject to good-faith dispute. It is just the law. Courts define information as "uncontroversial" if its truth is not disputed and it is not part of a live ideological debate. *NetChoice v. Weiser*, 808 F. Supp. 3d 1223, 1235-36 (D. Colo. 2025). For instance, in *CompassCare v. Hochul*, the Second Circuit

upheld against a facial First Amendment challenge a statute requiring employers to provide notice in employee handbooks about employee rights and remedies under a state anti-discrimination law concerning "discrimination based on an employee's or a dependent's reproductive health decision making." 125 F.4th 49, 54 (2d Cir. 2025). The court concluded requiring disclosure of "the terms of employment under New York law" amounted to "disclosure only of purely factual and uncontroversial information about the terms under which services w[ould] be available." *Id.* at 65, 67 (quotation marks and alterations omitted). Importantly, in evaluating whether a required disclosure about the existing law was "uncontroversial," the court did not consider the law's underlying policy judgment, even if that was controversial. *See id.* at 65 ("Of course, the policy judgment that motivated the Act may be 'controversial' . . . . But the existence and contents of the Act – and an employer's obligation to comply with it – is not itself controversial."). Plaintiffs dispute the legislature's policy judgment here, but that does not render the CFDCPA Disclosure law "controversial" for First Amendment purposes.

Third, the CFDCPA Disclosure law is reasonably related to Colorado's legitimate interest in consumer protection. The statute ensures that consumers understand their rights regarding medical debt and credit reporting, preventing confusion and protecting them from inaccurate credit information. Courts have consistently recognized that informing consumers of their legal rights and obligations serves a substantial government interest. *See Zauderer*, 471 U.S. at 651 (upholding disclosure requirements aimed at preventing consumer deception); *United States v. Wenger*, 427 F.3d 840, 850 (10th Cir. 2005) (same). By requiring debt collectors to disclose that medical debt cannot be reported except under narrow circumstances, Colorado advances its goals of promoting transparency, preventing deception, and avoiding harm to consumers' creditworthiness.

Fourth, the complaint does not plausibly allege that the CFDCPA Disclosure law is unduly burdensome. Doc. 28 at 43-47; *cf. CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 849 (9th Cir. 2019) (holding a disclosure requirement not unduly burdensome when it "does not interfere with advertising or threaten to drown out messaging"). Instead, Plaintiffs' main concern appears to be that the disclosure prevents circumvention of the CCRA's substantive limitations on medical debt reporting. *E.g.*, Doc. 28 ¶ 14.

Plaintiffs contend that the CFDCPA Disclosure law does not concern "purely factual" information because it could "becom[e] inaccurate," as "legal developments can change the underlying medical debt reporting landscape." Doc. 34 at 3. But the possibility that the regulatory landscape may evolve does not invalidate a factual, noncontroversial disclosure requirement. If Plaintiffs' theory were accepted, countless longstanding disclosure regimes, many of which rely on existing legal frameworks, would be perpetually vulnerable to facial attacks simply because the law might change in the future. And though Plaintiffs here "contend the underlying prohibition [on reporting medical debt] is invalid," as discussed above, this Court lacks jurisdiction over that challenge. As a result, any prospect that the disclosure could become nonfactual because Colorado law may change in the future is purely speculative. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (plaintiffs lack standing where alleged harm is "conjectural or hypothetical").

The Court should dismiss Plaintiffs' First Amendment challenge to the CFDCPA Disclosure law.

### b. Plaintiffs' Free Speech challenge to the CFDCPA Misrepresentation law fails because the law only restricts false or misleading commercial speech.

Plaintiffs' First Amendment challenge to the CFDCPA Misrepresentation law fails because false or misleading commercial speech is not protected speech. *See* C.R.S. § 5-16-107(1)(r)(I)

(protecting consumers against debt collectors that falsely represent that, under Colorado law, medical debt will be included in a consumer report or factored into a credit score absent certain narrow exceptions). Accordingly, this claim fails as a matter of law.

There is no First Amendment right to make false or misleading representations in connection with debt collection, because such speech is not protected speech. *In re R. M. J.*, 455 U.S. 191, 203 (1982) (false or misleading commercial speech "may be prohibited entirely"). Plaintiffs argue that the statute discriminates based on content (because it applies only to medical debt) and purpose (because it includes an exception for large home purchases). *E.g.* Doc. 28 ¶ 72. But legislators are not required to regulate all forms of deceptive speech at once. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 387–90 (1992) (explaining that the "prohibition against content discrimination . . . applies differently in the context of proscribable speech than in the area of fully protected speech"). Selective regulation of specific harms, such as misleading representations about medical debt, is permissible so long as it does not favor or disfavor particular viewpoints. *Id*.; *see also Chaker v. Crogan*, 428 F.3d 1215, 1226 (9th Cir. 2005) ("[T]he First Amendment's core requirement of viewpoint neutrality [applies] even though the statute regulates otherwise unprotected speech.").

The CFDCPA Misrepresentation law does not prohibit speech based on viewpoint. It prohibits only false or misleading representations about whether medical debt will be included in a credit report or score under Colorado law. *See* C.R.S. § 5-16-107(1)(r)(I) (prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt, including . . . a false, deceptive, or misleading representation that the medical debt will be included in a consumer report"). Debt collectors remain free to express their views about the morality of

medical debt, healthcare access, or their political views on these issues—so long as they do not misrepresent whether medical debt will be included in a credit report or score under Colorado law.

Plaintiffs again assert that the CFDCPA Misrepresentation law could become "inaccurate." Doc. 34 at 3. But unlike the CFDCPA Disclosure law, this provision does not compel any particular speech that might become inaccurate if Colorado law changed. Instead, it simply restricts collectors from "mak[ing] a false, deceptive, or misleading representation that [a consumer's] medical debt will be included in a consumer report . . . or factored into a consumer's credit score." C.R.S. 5-16-107(1)(r)(I). Because the law only prohibits representations by debt collectors that are "false, deceptive, or misleading," it regulates unprotected speech.

Because the statute regulates unprotected speech and is viewpoint neutral, it does not violate the First Amendment. Plaintiffs' First Amendment challenge to the CFDCPA Misrepresentation law should be dismissed.

**CONCLUSION**

Plaintiffs' Claims One and Two concerning the CCRA should be dismissed, and Claim Two concerning their First Amendment challenges to the CFDCPA should be dismissed.

DATED this 8th day of July, 2026.

PHILIP J. WEISER
Attorney General, State of Colorado

*/s/ Talia Kraemer*
**Kevin J. Burns**, Senior Assistant Attorney General
**Talia Kraemer**, Senior Assistant Attorney General
1300 Broadway, 9th Floor
Denver, CO 80203
720-508-6000
Kevin.Burns@coag.gov
Talia.Kraemer@coag.gov