**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge R. Brooke Jackson**

Civil Action No. 25-cv-03530-RBJ

ACA INTERNATIONAL and
FRESNO CREDIT BUREAU,

Plaintiffs,

v.

MARTHA FULFORD, in her official capacity, and
PHILIP WEISER, in his official capacity,

Defendants.

---

## ORDER

---

This matter is before the Court on Plaintiffs' Request for Judicial Notice ("Request"). ECF No. 39. For the following reasons, the Motion is **DENIED**.

## BACKGROUND

Plaintiffs raise various challenges to the passage of HB 23-1126 by the Colorado General Assembly, which, among other things, amended portions of the Colorado Consumer Credit Reporting Act ("CCRA"). Relevant to this order, Plaintiffs contend that Defendant Colorado Attorney General Philip Weiser ("Weiser") enforces the CCRA's prohibition of a Consumer Reporting Agency (CRA) from reporting adverse medical debt through Weiser's powers under the Colorado Consumer Protection Act ("CCPA"). ECF No. 28 at 15. Defendants have filed a Motion to Dismiss in Part the Second Amended Complaint ("Motion to Dismiss"), arguing, in part, that dismissal is proper under Federal

Rule of Civil Procedure 12(b)(1) because Defendants do not fall under the *Ex parte Young* exception to state sovereign immunity. ECF No. 38 at 4.

Plaintiffs' Request asks the court to take judicial notice of a publicly available social media post by a Facebook page for Weiser's governor campaign. The post is an approximately thirty-second video of Weiser saying:

> Right now, the biggest form of debt in America is medical debt. People who have an emergency procedure all of a sudden can be out thousands, tens of thousands, hundreds of thousands of dollars and it can happen with surprise bills. It's not fair. That's why I fought for legislation in Colorado. Medical debt can't be placed on your credit record, and you can't be subject to debt collection if it's a surprise bill or you're otherwise contesting it. Right now, the Trump administration is trying to take away these protections. We'll fight for these protections. I'll always fight for Colorado.

ECF No. 39 at 4. The post also has the following caption: "Keeping medical debt on credit reports hurts families already struggling with unexpected bills. It's outrageous—and it's cruel. I've taken on predatory medical debt practices before, and I won't stop now. #copolitics #philforcolorado #medicaldebt." *Id.* at 2.

Plaintiffs claim that this post is relevant to Defendants' argument in their Motion to Dismiss that "there is no evidence the Attorney General has ever used his CCPA powers to enforce the CCRA's limitations on medical debt reporting or has plans to do so in the future." ECF No. 38 at 10. Defendants oppose the Request for two procedural reasons. First, because Plaintiffs did not confer with them beforehand, and second, because Plaintiffs did not include their allegations relating to the video in their Second Amended Complaint. ECF No. 41 at 1, 4. Defendants also argue that the Court should deny the Request because the video's meaning is subject to reasonable dispute and is therefore unsuitable for judicial notice. *Id.* at 2–4. The Court agrees with Defendants' latter argument.

## LEGAL STANDARDS

Under Federal Rule of Evidence 201, if a party requests it and supplies the necessary information, a Court must judicially notice a fact "that is not subject to reasonable dispute" because it (1) is generally known within the court's jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FRE 201(b)–(c). "Judicial notice is proper when a fact is beyond debate, for instance, what time the sun sets on a given day." *The Est. of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016).

## DISCUSSION

### I. Procedural Objections

With respect to Defendants' objection that Plaintiffs did not confer with them prior to filing the Request as required by D.C.COLO.LCivR 7.1(a), the Court agrees with Defendants that this constitutes an independent ground to deny the request. *See Kohn v. Rieder Noram Inc.*, No. 23-CV-01830-CYC, 2025 WL 2676045, at *2 (D. Colo. Sept. 18, 2025); *see also Bardol v. City of Salida*, No. 25-CV-02889-KAS, 2026 WL 2858799, at *7 n.6 (D. Colo. Sep. 23, 2026) (denying request for judicial notice for failure to comply with Local Rule 7.1(d)); *Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011) (affirming district court's denial of motion for failure to confer).

Plaintiffs note that any conferral would have been futile as Defendants would not have consented to the requested judicial notice. ECF No. 43 at 10. But as at least one court in this district has noted, futility is not one of the exceptions enumerated by Local Rule 7.1(b) to a party's duty to confer. *Otter Prods., LLC v. Big Birds, LLC*, No. 19-CV-00626-DME-KLM, 2021 WL 4439798, at *3 (D. Colo. Sep. 27, 2021).

Nevertheless, the Court agrees with Plaintiffs that Defendants have been minimally prejudiced by their failure to confer and that the matter is particularly relevant to the contested issue of Defendants' willingness to enforce the challenged statutes. Rather than denying the Request without prejudice and waiting for the parties to confer, since the issue has already been briefed, the Court finds it most efficient to rule on the merits of the Request at this time. *See Otter* at *4 (addressing issue raised in motion, despite Local Rule 7.1(a) violation, to enable "meaningful negotiations" between the parties (citation omitted)).

Furthermore, the Court is unpersuaded by Defendants' argument that the Request should be denied because Plaintiffs did not include reference to the video in their operative complaint. ECF No. 41 at 4. Rule 201(d) allows a court to take judicial notice of a fact "at any stage of the proceeding," and judicially noticed facts are a specific exception to the general rule prohibiting courts from considering evidence outside of the complaint when evaluating a motion to dismiss. *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1298 (10th Cir. 2025) ("*Fuqua I*"), *cert. denied sub nom. Zook v. Fuqua*, No. 25-1108, 2026 WL 2976216 (U.S. Oct. 5, 2026). Because Defendants direct the Court to no authority for their proposition that Plaintiffs waived their right to request judicial notice of the video by not referring to it in their operative complaint, the Court will not bar them from doing so.

## II. Reasonable Dispute

Turning to the merits, Defendants maintain that the video fails to meet the requirements of Rule 201 because its meaning is subject to reasonable dispute. ECF No. 41 at 2. Plaintiffs respond by arguing that they are not asking the Court to determine what

Weiser's statements in the video mean, but instead simply to take notice of "a simple, indisputable fact: that . . . Weiser made these specific statements about the specific statutes at issue in this case." ECF No. 43 at 3. The Court agrees with Defendants.

Plaintiffs seek to have their cake and eat it too. While they assert that they are merely requesting the Court to judicially notice the *existence* of Weiser's statements, they undoubtedly are also asking the Court to draw conclusions about the *meaning* of the words. This the Court may not do. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (judicially noticed documents in the public record "may only be considered to show their contents, not to prove the truth of matters asserted therein." (citation omitted)). For example, Plaintiffs state in their support for the Request that they "proffer the Facebook post to provide a real-world example <u>consistent</u> with allegations in the [operative complaint] and <u>contrary to extrinsic evidence</u> stated in a Motion to Dismiss." ECF No. 43 at 4. Such a finding that the video demonstrates Weiser's intent to enforce the CCRA necessarily requires interpretation of what the video means.[1] The Court also finds it telling that Plaintiffs devote entire sections of their briefing in support of their Request to arguing the meaning of Weiser's statements and relevance to the case. ECF No. 43 at 5–6, 8–9.

---

[1] Though the Court declines to delve into interpretation of Weiser's statements in the video, it is worth noting that Plaintiffs' translation of his words are not particularly persuasive. For example, Plaintiffs make much of the fact that the video "discuss[es] the statutes directly at issue in the instant matter." ECF No. 39 at 1. But the video doesn't mention by name HB 23-1126 or the CCRA, let alone discuss using the CCPA to prosecute CRAs that report medical debt. And the only concrete statements Weiser makes about what he has done or will do relate generally to taking on "predatory medical debt practices" and fighting for protections around medical debt and surprise or contested bills. Perhaps recognizing this ambiguity, Plaintiffs do not contend that their interpretation of the video is a fact not subject to reasonable dispute or falls under either of the Rule 201(b) prongs.

Such use of judicial notice as a backdoor to admitting a video with contents "subject to reasonable dispute" is precisely what the Tenth Circuit rejected in *Fuqua*. *Fuqua I*, 157 F.4th at 1299 (citing Rule 201(b)). In that case, the estate of a man shot and killed by police sued for excessive force in violation of the Fourth Amendment. *Id.* at 1294–95. The plaintiff's complaint, however, never mentioned that the man fired a BB gun at officers or fled toward an occupied car shortly before the shooting. *Id.* After the defendants moved to dismiss the complaint under Rule 12(b)(6) based on qualified immunity, the district court denied their request to take judicial notice of dash and body-camera footage of the encounter, which they claimed directly contradicted the complaint's allegations and confirmed that they acted reasonably. *Id.* at 1296.

In affirming the district court's decision, the Tenth Circuit said, "if the district court had considered the videos, it would have had to weigh evidence and make factual findings—such as whether the officers saw [the deceased man] drop his BB gun, or whether [he] ran toward the occupied car—when ruling on the motion to dismiss," which it could not do. *Fuqua I*, 157 F.4th at 1299. As the district court put it:

> The bottom line is that the parties' videos do not convey a set of uncontroverted 'facts' in the same way that a State court docket entry or a birth certificate conveys a set of uncontroverted facts. The video still has to be interpreted: making sense of the video requires the Court to exercise its own judgment about what it depicts. Exercising judgment in this fashion is the antithesis of how judicial notice works and counsels against relying on the videos at the motion-to-dismiss stage.

*Fuqua v. Santa Fe Cnty. Sheriff's Off.*, No. CIV 23-0685 JB/LF, 2025 WL 1331667, at *37 (D.N.M. May 7, 2025) ("*Fuqua II*"), *aff'd,* 157 F.4th 1288 (10th Cir. 2025), *cert. denied sub nom. Zook v. Fuqua*, No. 25-1108, 2026 WL 2976216 (U.S. Oct. 5, 2026). Likewise, the video Plaintiffs request to be judicially noticed would have to be interpreted by the Court

to determine whether Weiser meant he would enforce the CCRA in the way Plaintiffs claim.

Plaintiffs attempt to distinguish *Fuqua* in two ways. First, they argue that the bodycam footage in that case "captured split-second physical events in a chaotic, rapidly evolving encounter, the interpretation of which was hotly disputed," whereas here, "the spoken and printed words are not contested or in dispute." ECF No. 43 at 4. But just as visual evidence of what happened during a fast-paced police encounter can be complicated, parsing vague and general statements made by a politician can be equally fraught, if not more. Of course, contrary to Plaintiffs' assertion, Defendants oppose the Request precisely because they do contest the video's interpretation.

Second, Plaintiffs focus on the fact that the videos in *Fuqua* were offered by Defendants to dispute the allegations of the complaint, unlike here, where Plaintiffs seek to admit a video consistent with their complaint and contrary to Defendants' Motion to Dismiss. ECF No. 43 at 4. But neither the district court nor the Tenth Circuit in *Fuqua* indicated that it was this procedural posture that led the courts to find the videos unsuitable for judicial notice. In fact, both parties in *Fuqua* sought to admit some of the videos, and the Tenth Circuit specifically used language that would also apply to plaintiffs seeking to bolster their complaint when confronted with a motion to dismiss. *Fuqua I*, 157 F.4th at 1298–99 ("[I]t would be improper for us to use extrinsic evidence to question 'the truth or falsity' of the allegations at this stage in the litigation." (citation omitted)). Plaintiffs' characterization of their Request to only be asking the Court to take judicial notice of the video's "existence," but that "[a]t the merits stage, the Court can determine whether this evidence is ultimately dispositive of the *Ex parte Young* inquiry," ECF No. 43 at 9, is

analogous to the *Fuqua* defendants' attempt to "use the videos to undermine and attack the veracity of the complaint," *Fuqua*, 157 F.4th at 1299.

Thus, because the video's contents are subject to reasonable dispute, the Court may not take judicial notice of Weiser's Facebook post.

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1) Plaintiffs' Request for Judicial Notice, ECF No. 39, is **DENIED.**

DATED: November 24, 2026

BY THE COURT:

R. Brooke Jackson
United States District Judge